ALFRED FORBES *vs.* THOMAS WEBSTER.

F and W were joint owners of a quantity of lumber, and one B purchased it of W. Afterwards, B paid to F thirty dollars on account of said purchase : after this W, claiming to have been the sole owner of the property, sued B for the purchase money ; and B in order to avoid a law-suit, paid said sum to W. Afterwards F, and W submitted all matters in dispute to referees, and in the exhibits F credited to W the thirty dollars, which was allowed. B then brought an action against F and W to recover back one of said sums. F and W both appeared, and the suit was continued : but they, not appearing again, were defaulted, and judgment was rendered for the amount claimed. F paid a part of said judgment, and brought an action against W to recover from him the amount so paid. It was held that W was liable to F for the amount F had paid on said judgment.

This was an action of *Assumpsit* : the declaration contained two counts—one for money paid, laid out and expended, and the other for money had and received. Plea—the *general issue.*

At the trial in the County Court it was proved, that in the year 1822, and the year following, the plaintiff and defendant were partners in the lumber business—That in 1822 one *Amasa I. Brown,* not knowing they were partners, contracted with *Webster* for some timber belonging to the company—That some time in the year 1823, *Forbes* received of *Brown* at *Quebec* thirty dollars due on account of said contract—That some time after this, and previous to the reference hereafter mentioned, *Brown* informed *Webster* of the payment he had made to *Forbes,* and *Webster* refused to allow it, on the ground the timber did not belong to the company ; and commenced an action against *Brown* to recover the money. *Brown,* not knowing he could prove a partnership, and wishing to avoid the expense and trouble of a suit, paid the thirty dollars to *Webster*—That in the year 1824, difficulties having arisen between *Forbes* and *Webster,* they submitted *all matters of demand and dispute* to referees, whose report was made to the Court and accepted : and in the exhibits to the referees *Forbes* credited to *Webster* the thirty dollars which he, *Forbes,* had received of *Brown* at *Quebec,* and the same was allowed to *Webster*—That after this, *Brown* having learned the partnership between *Forbes & Webster,* commenced an action against them to recover back one of said sums of thirty dollars which he had paid to them—that they both appeared and answered to said suit, and *Webster* exhibited, and pleaded in offset, an account in *Forbes'* hand writing, and the suit was continued—that they, not appearing again in said suit, were defaulted, and Judgment was rendered against them for the amount claimed by *Brown*—That an execution was issued thereon, on which *Forbes* paid eighteen dollars and fifty six cents, and $2,70 officers fees, and *Webster* paid the remainder of the execution and officers fees. The present action was brought to recover the sums *Forbes* had paid on said execution. The County Court

were of opinion that the action could not be sustained, and judgment was rendered for the defendant. The plaintiff filed exceptions to the decision of the County Court, and the cause now came before this Court on a motion for a new trial founded on said exceptions.

FRANKLIN,
January,
1829.

Forbes
vs.
webster.

*Mr. Fisk for the plaintiff.*—1. The plaintiff contends that the money recovered by *Brown* against plaintiff and defendant was firstly drawn out of *Brown* by imposition and fraud, or false representations of the defendant, and as the same related to a partnership concern between the plaintiff and defendant, it gave *Brown* a legal and equitable claim on both plaintiff and defendant, which could not in good conscience be resisted.

2. As the money obtained by defendant from *Brown* was by the defendant kept to his own use, and the same recovered back of plaintiff and defendant, the amount paid by plaintiff, of the last mentioned sum, in satisfaction of *Brown's* judgment, he ought now to recover of defendant as money obtained from plaintiff by the imposition of defendant. 2 *Burr.* 1010, 1012.—2 *Strange,* 915, *Astley* vs. *Reynolds.*—*Esp.N.P.* 4.—2 *Wilson,* 207—8.— *A****** vs. *Campbell.*

*Mr. Richardson for the defendant.*—1. The whole transacaction, so far as it related to the receipt of the money of *Brown,* was completed before the reference between plaintiff and defendant. This was a reference of all matters of dispute between the parties, and ought to *have,* and did by the nature of the submission, include this subject matter. The whole subject of this suit was then settled by the reference, and cannot again be disputed or litigated.

2. But if the court should be of opinion that the suit is not barred by the reference, then it is contended that the case does not sufficiently show that *Forbes* was in any way entitled to receive the money of *Brown* in *Quebec,* as the contract betwen *Brown* and *Webster* was a private one, and *Brown,* having sued plaintiff and defendant jointly, does not prove that they were partners in this transaction.

3. It is further contended, that it appears from the case, the payment by *Brown* of the $30 to *Webster* was wholly voluntary ; as it was paid to get rid of a suit, and could not have been recovered back of *Webster* and *Forbes,* or of *Webster* alone : the recovery, therefore, must have been upon the ground that the money paid to *Forbes* in *Quebec* was paid by mistake ; and the recovery of *Brown* against *Forbes* and *Webster.* must have been upon that ground alone.

FRANKLIN,
January,
1829.

Forbes
vs.
Webster.

4. If the Court should be of opinion, from a view of the case, that *Forbes* had a right to receive the money of *Brown*, then, as the payment to *Webster* was voluntary, *Brown* could not have maintained his action to recover it back if *Brown's* claim had been resisted; and in as much as both *Forbes & Webster*, after appearing, abandoned the suit, it would not accord with equity or good conscience for *Forbes* to recover of *Webster* the amount paid by him, he having paid but one half of the sum recovered.

5. The crediting of the money by *Forbes* to *Webster* in the accounts exhibited before the reference, shows that the subject matter was considered there; and as all matters in dispute were submitted and decided, it is to be presumed this was fully adjusted: but at all events the credit was wholly gratuitous upon the part of *Forbes*, and cannot now lay the foundation of an action.

6. It does not appear from the case but that the amount received by *Webster* of *Brown* was also credited on *Webster's* account exhibited to the referees. This is to be presumed, unless the contrary be proved: and it would do away the benefits of a reference of all matters, if the parties were compelled to prove each individual item that was settled by such reference.

The opinion of the Court was pronounced by

PADDOCK, J. It will readily be seen that *Forbes* is the sufferer in this transaction, to the amount which *Brown* collected of him; and it is no answer to the action to say, that the money was received by *Webster* previous to the reference between him and *Forbes*; for if there is now any cause of action, it accrued subsequent to the reference, that is, upon *Brown's* compelling *Forbes* to pay the half of his execution. For though *Brown* did pay for the lumber, a second time, to *Webster*, it was no injury to *Forbes*; and he was under as much obligation to account with *Webster* for the amount received by him, as he would have been, if *Brown* had not paid a second time: though had he known of the second payment, he might have required before the referees security against his liability to refund the thirty dollars, it being received by *Webster* while *Forbes* was a partner.

Nor does *Brown's* judgment against *Forbes & Webster* stand in the way of a recovery, as suggested by council; for if *Forbes* has a cause of action in the present case, that judgment is the foundation upon which it rests. Let this case be determined either way, and *Brown* is not affected by it, nor is that judgment in any wise disturbed: if it were, it would follow, that a *surety* being compelled by process to pay a portion of the sum for which he was bound, could not recover the same of his principal.

The only doubtful question in the case is, whether *Brown's* paying the $30, to *Webster*, can be called a voluntary payment; for if it was, he could not have recovered back the amount in a suit against *Forbes & Webster.*

FRANKLIN.
*January,*
1829.

Forbes
*vs.*
Webster.

There is some difficulty in reconciling all the decisions which have been made where a voluntary or involuntary payment was the principle point to be decided, and upon which the cause was to turn ; and perhaps they cannot, upon any other ground than that where the evidence was such as nearly to balance the case, strong equity on the part of the plaintiff caused a preponderance. It may be said, that to decide this cause in favor of the plaintiff, will be directly contradicting the case of *Marriot* vs. *Hampton,* 7. T. R. 269. It is true that some of the features of that case bear a near resemblance to *Brown's* suit against *Forbes & Webster* ; but may be distinguished from it. *Marriot* had once paid his debt to *Hampton,* and had taken his receipt ; but when sued for the same a second time, his receipt was mislaid, and he was without proof to defend himself; and therefore paid a second time. But upon bringing has action for money had and received, after finding his receipt, it was adjudged that he should not recover. And undoubtedly the Court were led to such decision by considering, that the mislaying the receipt was his own negligence, and would not suffer another suit to grow out of his own folly.

But in *Astley* vs. *Reynolds,* 2 *Str.* 915, where *Astley* had pawned to the defendant certain goods ; upon going to redeem them, and offering £4 as interest on the loan, which was more than the legal interest, the defendant demanded £10.; whereupon *Astley* finding he could not get his goods back short, paid the sum demanded, and then brought his action to recover back the balance : and it was held well to lie, having been paid by compulsion.

The compulsion, however, was no greater in that case, than in *Brown's* payment to *Webster.* *Astley* could not get his goods without paying the amount demanded, or resorting to his action of *trover* : Neither could *Brown* get released from the suit *Webster* had brought against him in a foreign government, short of paying the $30 ; and if necessity would justify paying in the one case, it would in the other ; for it was taking an undue advantage of *Brown,* suing him in *Quebec,* as I understand he did, where he was neither acquainted with the people nor their laws.

It was also a gross imposition in *Webster,* affirming that *Forbes* had no interest in the lumber, nor right to receive the pay for it ; and he comes forward now with a poor grace indeed, saying that the payment to him was voluntary. Why did he not make that defence to *Brown's* suit against *Forbes* and himself? Having neg-

FRANKLIN,
January,
1829.

Forbes
*vs.*
Webster

lected it there, it is too late to do it here.  Without deciding the question whether *Brown* could have recovered against *Forbes &* *Webster* or not, had a defence been made, we think the judgment in that case is no bar to the present action, as this is not between the same parties, and has no tendency to disturb it : and as money was collected of *Forbes* which belonged exclusively to *Webster* to have paid, or refunded to *Brown*, *Forbes* has a legal claim to recover it back in this action : therefore the judgment of the County Court must be reversed, and a new trial granted.

           Judgment reversed.

  *Fisk*, for plaintiff,
  *Richardson*, for defendant.